**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JAMES PARK, CATHERINE RAMOS,
GEOFFREY ADAMSON and
MICHAEL KUZMIAK,

                          *Plaintiffs,*

                v.

SHINHAN FINANCIAL GROUP CO., LTD.,
SHINHAN BANK CO., LTD.,
SHINHAN BANK AMERICA,
JIN OK-DONG, JI YOUNG YOOK,
CHARLES CONSTANTIN, JUNG JI HO,
KANG SHIN TAE, DANIEL E. FRYE,
DAE-KI MIN, WALTER O'MEARA,
RYAN PAK, and LEE SOON YOO,

                          *Defendants.*

Case No. 22-cv-10331
(VSB)(KHP)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS**
**SHINHAN BANK AMERICA, CHARLES CONSTANTIN, DANIEL E. FRYE, WALTER**
**O'MEARA, DAE-KI MIN, RYAN PAK, AND JI YOUNG YOOK**
**TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064

*Attorneys for Defendants Shinhan Bank America, Charles Constantin,*
*Daniel E. Frye, Walter O'Meara, Dae-Ki Min, Ryan Pak, and Ji*
*Young Yook*

## **TABLE OF CONTENTS**

Table of Authorities ..................................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

    A.    Shinhan Bank America and Its Compliance with AML Obligations ................... 3

    B.    SHBA Hires Plaintiffs as BSA/AML Compliance Officers as Part of Its
        Compliance Efforts Relating to the 2017 Consent Order ...................................... 4

    C.    Plaintiffs' Purported Whistleblowing Complaints.................................................. 5

    D.    SHBA Terminates Plaintiffs for Neutral, Non-Discriminatory Reasons
        Unrelated to Their Alleged Whistleblowing Activities ......................................... 7

        1.    Adamson Is Dismissed in October 2020 Due to Divisional
            Restructuring............................................................................................. 7

        2.    The CCOB Approves the Decision to Dismiss Park and Ramos for
            Performance Reasons at the December 2020 CCOB Meeting ................... 7

        3.    Kuzmiak Is Dismissed in March 2021 for Poor Performance ................... 8

    E.    Park and Ramos Complain About Constantin's Purported Conduct After
        Learning About SHBA's December 2020 Decision to Terminate Them .............. 8

    F.    This Litigation......................................................................................................... 9

ARGUMENT ...................................................................................................................... 9

I.    Legal Standard ........................................................................................................... 9

II.    The Amended Complaint Fails to State a Violation Under the FIRREA ........................ 10

    A.    There is No Cause of Action Under the FIRREA Against Individual
        Defendants ............................................................................................................. 11

    B.    Plaintiffs Fail to Plausibly Allege Their Purported Whistleblowing Was
        Regarding "a Possible Violation of Any Law or Regulation".............................. 11

    C.    Plaintiffs Fail to Allege That Their Purported Complaints Were a
        Contributing Factor Resulting in Their Termination ........................................... 14

III.    The Amended Complaint Fails to State a Violation Under the AMLA ......................... 16

    A.    Plaintiffs Have Failed to Exhaust Administrative Remedies............................... 17

    B.    There is No Cause of Action Under the AMLA Against the Individual
        Defendants ............................................................................................................. 18

IV.    The Amended Complaint Fails to State a Hostile Work Environment Claim or a
    Gender Discrimination Claim Under the NYCHRL.......................................................... 21

    A.    Ramos Fails to State a Claim as Against Frye, Min, O'Meara, Pak, and
        Yook....................................................................................................................... 21

    B.    Ramos Fails to Allege Defendants' Discriminatory Intent or Conduct............... 21

V.      The Amended Complaint Fails to State a Retaliation Claim Under the NYCHRL.......... 24

VI.     Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction
        Over Plaintiffs' NYCHRL Claims ...................................................................................... 25

CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Tournament Play, Inc.* v. *Town of Wallkill*,
   444 F. App'x 475 (2d Cir. 2011) ...........................................................9

*Alvarez* v. *New York City Dep't of Educ.*,
   2021 WL 1424851 (S.D.N.Y. Apr. 15, 2021).....................................25

*Aryai* v. *Forfeiture Support Assocs.*,
   25 F. Supp. 3d 376 (S.D.N.Y. 2012).....................................................20

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009)..................................................................9, 10

*Ashmore* v. *CGI Grp. Inc.*,
   2012 WL 2148899 (S.D.N.Y. June 12, 2012) .....................................16

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007)..................................................................9, 10

*Berman* v. *Neo@Ogilvy LLC*,
   2014 WL 6865718 (S.D.N.Y. Aug. 15, 2014)....................................20

*Bliss* v. *MXK Rest. Corp.*,
   220 F. Supp. 3d 419 (S.D.N.Y. 2016)...................................................23

*Boyar* v. *Yellen*,
   2022 WL 120356 (2d Cir. Jan. 13, 2022) ...........................................18

*Chaleplis* v. *Karloutsos*,
   2023 WL 2976277 (E.D. Pa. Apr. 18, 2023) .......................................17

*Cosgrove* v. *Fed. Home Loan Bank of New York*,
   1999 WL 163218 (S.D.N.Y. Mar. 23, 1999) .......................................11

*Daly* v. *Citigroup Inc.*,
   939 F.3d 415 (2d Cir. 2019)....................................................................17

*Davis-Bell* v. *Columbia Univ.*,
   851 F. Supp. 2d 650 (S.D.N.Y. 2012)...................................................21

*Dellefave* v. *Access Temps., Inc.*,
   2001 WL 25745 (S.D.N.Y. Jan. 10, 2001) .........................................23

*Dyas* v. *City of Shreveport*,
  2018 WL 2169976 (W.D. La. May 10, 2018) ........................................................20

*Faiman* v. *Ridgewood Sav. Bank*,
  2013 WL 3305785 (S.D.N.Y. May 31, 2013) ........................................................12

*Fattoruso* v. *Hilton Grand Vacations Co., LLC*,
  873 F. Supp. 2d 569 (S.D.N.Y. 2012) ..................................................................22

*Fruge* v. *Bd. of Governors of Fed. Rsrv. Sys.*,
  2022 WL 5166031 (D.D.C. Oct. 5, 2022) .............................................................14

*Garcia* v. *N.Y.C. Health & Hosps. Corp.*,
  2019 WL 6878729 (S.D.N.Y. Dec. 17, 2019) .......................................................24

*Gonzalez* v. *City of New York*,
  377 F. Supp. 3d 273 (S.D.N.Y. 2019)..............................................................21, 22

*Gooden* v. *Joseph P. Addabbo Fam. Health Ctr., Inc.*,
  2023 WL 2709735 (E.D.N.Y. Mar. 30, 2023) ................................................18, 23

*Gorokhovsky* v. *N.Y.C. Hous. Auth.*,
  552 F. App'x 100 (2d Cir. 2014) ..........................................................................25

*Harris* v. *NYU Langone Med. Ctr.*,
  2013 WL 3487032 ................................................................................................10

*Johnston* v. *Merit Sys. Prot. Bd.*,
  518 F.3d 905 (Fed. Cir. 2008)..............................................................................13

*Lane* v. *Maryhaven Ctr. of Hope*,
  944 F. Supp. 158 (E.D.N.Y. 1996) .......................................................................20

*Leizerovici* v. *HASC Ctr., Inc.*,
  2018 WL 1114703 (E.D.N.Y. Feb. 27, 2018).......................................................24

*Lucio* v. *New York City Dep't of Educ.*,
  575 F. App'x 3 (2d Cir. 2014) ..............................................................................16

*Makarova* v. *United States*,
  201 F.3d 110 (2d Cir. 2000).................................................................................10

*Malcolm* v. *Ass'n of Supervisors & Adm'rs of Rochester*,
  831 F. App'x 1 (2d Cir. 2020) ..............................................................................25

*Marciniszyn* v. *PerkinElmer Inc.*,
  2018 WL 8729590 (D. Conn. Mar. 27, 2018) ......................................................19

*McCallum* v. *Mayorkas*,
2023 WL 3203011 (D.D.C. May 2, 2023) ...........................................................................14

*Morrison* v. *Jones*,
2021 WL 5829749 (2d Cir. Dec. 9, 2021) .............................................................................21

*Nielsen* v. *AECOM Tech. Corp.*,
762 F.3d 214 (2d Cir. 2014).................................................................................................20

*Nnebe* v. *City of New York*,
2023 WL 2393920 (S.D.N.Y. Jan. 30, 2023) ......................................................................21

*Olaechea* v. *City of New York*,
2019 WL 4805846 (S.D.N.Y. Sept. 30, 2019)......................................................................22

*Pinero* v. *Long Island State Veterans Home*,
375 F. Supp. 2d 162 (E.D.N.Y. 2005) .................................................................................24

*Pollak* v. *Bd. of Trustees of the Univ. of Ill.*,
2004 WL 1470028 (N.D. Ill. June 30, 2004) .......................................................................19

*Powell-Coker* v. *Norfolk S. Ry. Co., Inc.*,
2018 WL 5116837 (N.D. Ala. Oct. 19, 2018) ......................................................................20

*Robinson* v. *Overseas Military Sales Corp.*,
21 F.3d 502 (2d Cir. 1994)....................................................................................................10

*Ruiz* v. *New Avon LLC*,
2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019) .......................................................................9

*Russo* v. *N.Y. Presbyterian Hosp.*,
972 F. Supp. 2d 429 (E.D.N.Y. 2013) .................................................................................24

*U.S. ex rel. Sarafoglou* v. *Weill Med. Coll. of Cornell Univ.*,
451 F. Supp. 2d 613 (S.D.N.Y. 2006)...................................................................................19

*Schwyzer* v. *Fiduciary Tr. Co. Int'l*,
2008 WL 3539971 (S.D.N.Y. Aug. 4, 2008) .......................................................................12

*Segarra* v. *Fed. Rsrv. of New York*,
17 F. Supp. 3d 304 (S.D.N.Y. 2014), *aff'd sub nom. Segarra* v. *Fed. Rsrv.*
*Bank of New York*, 802 F.3d 409 (2d Cir. 2015), *and aff'd sub nom. Segarra* v.
*Fed. Rsrv. Bank of New York*, 617 F. App'x 106 (2d Cir. 2015)...........................11, 12, 13, 14

*Sleem* v. *U.S. et al.*,
2023 WL 3143429 (E.D.N.C. Mar. 27, 2023), *report and recommendation*
*adopted sub nom.*, 2023 WL 3136119 (E.D.N.C. Apr. 27, 2023) ..........................................18

*Stinnett* v. *Delta Air Lines, Inc.*,
   803 F. App'x 505 (2d Cir. 2020) .........................................................21

*Stinson* v. *City Univ. of N.Y.*,
   2018 WL 2727886 (S.D.N.Y. June 6, 2018) ........................................23

*Szewczyk* v. *Saakian*,
   774 F. App'x 37 (2d Cir. 2019) ...........................................................22

*Taft* v. *Agric. Bank of China Ltd.*,
   156 F. Supp. 3d 407 (S.D.N.Y. 2016)......................................12, 13, 14

*Tortorici* v. *Bus-Tev*,
   LLC, 2021 WL 4177209 (S.D.N.Y. Sept. 14, 2021) ...........................23

*Tyler* v. *Douglas*,
   280 F.3d 116 (2d Cir. 2001)..................................................................19

*Warney* v. *Monroe County*,
   587 F.3d 113 (2d Cir. 2009)....................................................................2

*Wathen* v. *Gen. Elec. Co.*,
   115 F.3d 400 (6th Cir. 1997) ................................................................19

*Wiest* v. *Lynch*,
   15 F. Supp. 3d 543 (E.D. Pa. 2014) ...............................................14, 16

*Wolf* v. *Pac. Nat. Bank*,
   2010 WL 5888778 (S.D. Fla. Dec. 28, 2010) ...........................12, 13, 15

*Yesudian ex rel. U.S.* v. *Howard Univ.*,
   270 F.3d 969 (D.C. Cir. 2001) .............................................................19

*Yost* v. *Everyrealm, Inc.*,
   2023 WL 2224450 (S.D.N.Y. Feb. 24, 2023)........................................22

**Statutes**

12 U.S.C. § 1813.........................................................................................3, 18

12 U.S.C. § 1831j.......................................................................................*passim*

12 U.S.C. § 5567............................................................................................19

18 U.S.C. § 1514A....................................................................................17, 19

26 U.S.C. § 7623............................................................................................19

31 U.S.C. § 5318..............................................................................................3

31 U.S.C. § 5323.................................................................................................... *passim*

49 U.S.C. § 42121 .......................................................................................17, 20

Fed. R. Civ. P. 12(b)(1)..........................................................................1, 10, 17, 18

Fed. R. Civ. P. 12(b)(6).................................................................................1, 9

**Other Authorities**

12 C.F.R. § 326.8 ..................................................................................................3

Defendants Shinhan Bank America ("SHBA") and individuals Charles Constantin, Daniel E. Frye, Walter O'Meara, Dae-Ki Min, Ryan Pak, and Ji Young Yook (the "Individual Defendants," and, together with SHBA, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss with prejudice Plaintiffs' amended complaint filed on February 8, 2023 (the "Amended Complaint"), ECF No. 8, in its entirety against Defendants.

## PRELIMINARY STATEMENT

Plaintiffs admit that the stated reasons for their termination were their own performance failures.  SHBA, a New York bank, hired the four Plaintiffs in late 2019 and early 2020 as compliance and anti-money laundering ("AML") officers.  They were responsible for SHBA's compliance efforts relating to a consent order the bank had entered into with the Federal Deposit Insurance Corporation (the "FDIC") in 2017 (the "2017 Consent Order") and for ensuring SHBA's continued compliance with AML laws and regulations.  During the course of their time at the bank, however, it became increasingly clear that each of the Plaintiffs was failing to perform key tasks central to their roles.  For example, Plaintiffs James Park, Senior Vice President and Bank Secrecy Act ("BSA") Officer, and Catherine Ramos, First Vice President Deputy BSA Officer, failed to file key compliance and AML reports timely and accurately, failed to make improvements requested by the internal auditors, failed to handle bank regulators' examinations competently, and failed to properly supervise their teams.  Similarly, Plaintiff Michael Kuzmiak, Vice President AML Systems and Advisory, failed to manage SHBA's transition to a new transaction monitoring system competently and failed to handle bank regulators' examinations competently.  Park, Ramos, and Kuzmiak were ultimately terminated for poor performance and violations of SHBA's attendance policies.  Plaintiff Geoffrey Adamson, First Vice President AML Systems and Advisory, was terminated because his duties

had been, over time, outsourced to outside vendors and his position was eliminated as part of a restructuring plan.  SHBA also found that, during the pandemic, Adamson had not logged into SHBA's systems for three months.   Plaintiffs offer nothing more than conclusory assertions that the reasons provided for their termination were pretextual and that the real reason was their alleged whistleblowing activities.[1]

While the factual record would ultimately demonstrate the meritless nature of this action in all respects, at this juncture, the applicable law and pleading standards compel dismissal of Plaintiffs' patently defective claims in their entirety.

*First*, Plaintiffs' Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") claim for whistleblower discrimination against SHBA and the Individual Defendants fails because (a) Plaintiffs have failed to plausibly allege that they complained to the FDIC about possible violations of a law or regulation; (b) they have failed to assert any plausible allegation that their purported complaints were a contributing factor resulting in their dismissal; and (c) individuals cannot be held liable under the FIRREA.

*Second*, Plaintiffs' Anti-Money Laundering Act of 2020 ("AMLA") claim for whistleblower discrimination against the Individual Defendants should be dismissed for failure to exhaust administrative remedies, and because individuals cannot be held liable under the AMLA.  Plaintiffs' AMLA claim also fails because there is no allegation that they had a "reasonable belief" that they were complaining to the FDIC about a violation of law, no plausible allegation that they in fact complained to the FDIC of a violation of law, and no plausible

---

[1]   On this motion, consistent with the Court's obligation to accept well-pleaded facts as true, Defendants address only the legal and pleading deficiencies in Plaintiffs' Amended Complaint. The allegations in the Amended Complaint are assumed to be true solely for purposes of this motion. *See Warney* v. *Monroe County*, 587 F.3d 113, 116 (2d Cir. 2009).

allegation that their purported complaints were a contributing factor resulting in their dismissal.

*Third*, Ramos' gender discrimination and hostile work environment claims against SHBA and the Individual Defendants under the New York City Human Rights Law ("NYCHRL") fail as against all Defendants because there is no plausible allegation of gender-based discriminatory treatment or animus, and as against Defendants Frye, Min, O'Meara, Pak, and Yook for the additional reason that there is no allegation that these individuals actually participated in any gender-based discriminatory or harassing conduct.

*Finally*, Ramos' and Park's gender-based retaliation claim against SHBA and the Individual Defendants under the NYCHRL fails because there is no plausible allegation of a causal connection between their purported protected activity and the alleged adverse action.  The Amended Complaint, on its face, alleges that the purported adverse action—SHBA's decision to dismiss Ramos and Park in December 2020—occurred *before* their alleged complaints in January 2021 regarding Defendant Constantin's supposedly improper conduct.

Accordingly, all claims against Defendants should be dismissed with prejudice.

## STATEMENT OF FACTS

### A.    Shinhan Bank America and Its Compliance with AML Obligations

SHBA, like other financial institutions supervised by the FDIC, 12 U.S.C. § 1813(q), is required to comply with certain requirements of the BSA, including maintaining an adequate AML program, which encompasses designating an adequate compliance officer, 31 U.S.C. §5318(h); 12 C.F.R. § 326.8.  It is also subject to the supervision of the New York State Department of Financial Services (the "NYS DFS").  Compl. ¶¶ 33, 51.[2]

In 2017, SHBA entered into the 2017 Consent Order with the FDIC to improve certain

---

[2]    "Compl. ¶" refers to paragraphs in the Amended Complaint.

aspects of its BSA/AML compliance program.[3]  *Id.* ¶ 52.  Since then, SHBA has dedicated

considerable time and resources to strengthen its BSA/AML compliance, including through the

independent oversight of the Compliance Committee of the Board (the "CCOB"), which includes

members with substantial experience and knowledge of BSA/AML compliance, *see id.* ¶¶ 41–42,

and by implementing remediation measures costing millions of dollars, *id.* ¶ 105.  Frye, Lee,

Min, O'Meara, Pak, and Yook are members of the CCOB.  *Id.* ¶¶ 26–30, 119 n.1.  Yook is the

current CEO of SHBA.  *Id.* ¶ 119 n.1.

**B.**    **SHBA Hires Plaintiffs as BSA/AML Compliance Officers as Part of Its Compliance Efforts Relating to the 2017 Consent Order**

SHBA hired Plaintiffs as BSA/AML compliance officers to "supervis[e] and

administ[er]" its compliance efforts with the 2017 Consent Order and the BSA/AML laws.  *Id.*

¶¶ 35, 71.  Park and Ramos were hired on September 3, 2019 to "lead" SHBA's compliance

efforts with the 2017 Consent Order, as Senior Vice President and BSA Officer and a First Vice

President Deputy BSA Officer, respectively.  *Id.* ¶¶ 9–10, 71.  In their roles, they were

responsible for timely and accurately filing Suspicious Activity Reports ("SARs") and Currency

Transaction Reports ("CTRs"), facilitating and responding to internal audit reviews and

addressing feedback from the regulators' Reports of Examination (the "ROEs"), and otherwise

ensuring BSA/AML compliance.  *Id.* ¶¶ 34–36, 50, 93, 258.  Park initially reported to the SHBA

Board and the CEO, *see e.g., id.* ¶ 96, and Ramos reported to Park, *id.* ¶ 10.  Adamson and

Kuzmiak were likewise hired to "aid in" SHBA's compliance efforts with the 2017 Consent

Order.  *Id.* ¶ 72.  Adamson began working at SHBA as First Vice President AML Systems and

Advisory on November 12, 2019 and reported to Park and Ramos.  *Id.* ¶ 11.  Kuzmiak began

---

[3]    The 2017 Consent Order was extended twice, in 2020 and 2022.  *Id.* ¶¶ 118, 309.

working as a Vice President AML Systems and Advisory on January 15, 2020 and initially reported to Adamson. *Id*. ¶ 12. As BSA and AML compliance officers, Plaintiffs were "personally responsible" for ensuring SHBA's AML compliance, and were subject to criminal and civil penalties if they failed in their obligations. *Id*. ¶ 50.

Despite their specific mandate to improve SHBA's compliance with the 2017 Consent Order, Plaintiffs failed to successfully accomplish their tasks, and SHBA hired Constantin on September 21, 2020 as the Chief BSA Officer to directly supervise Park and manage the BSA team. *Id*. ¶¶ 136, 139. Upon Constantin's arrival, Park's authority was diminished and his reporting line changed from the CEO and the Board to Constantin. *Id*. ¶¶ 136–39. After Adamson was terminated in October 9, 2020, Kuzmiak reported to Constantin. *Id*. ¶¶ 11–12.

### C.    Plaintiffs' Purported Whistleblowing Complaints

Plaintiffs' alleged whistleblowing activities fall into three categories: (1) complaints to SHBA's internal personnel, managers of SHBA's office building, and certain state and city regulators relating to COVID-19 and fire safety issues (the "Safety Complaints");[4] (2) complaints to the NYS DFS relating to the dismissal of certain personnel and purportedly inadequate remediation efforts;[5] and (3) complaints to the FDIC and two of Plaintiffs' peers

---

[4]    Plaintiffs allege that Adamson raised several fire and COVID-19-related safety complaints in 2020, including (i) complaining to SHBA's building manager that locked doors to stairwells posed fire safety concerns, Compl. ¶¶ 154–55, and (ii) complaining to SHBA's internal personnel and the New York City Building Department about SHBA's purported noncompliance with certain COVID-19 requirements, *id*. ¶¶ 158–60, 184. In March 2020, Park allegedly forwarded one of Adamson's complaints relating to COVID-19 safety directives to SHBA's internal personnel. *Id*. ¶ 161. In February 2021, Kuzmiak allegedly complained about SHBA's purported COVID-19 safety violations as well. *Id*. ¶ 283.

[5]    On January 5, 2021, Park allegedly emailed the NYS DFS about SHBA's decision to dismiss certain employees and purportedly inadequate remediation efforts. *Id*. ¶¶ 207–10. Specifically, Park complained that Constantin and the CCOB mentioned at a December 22, 2020 meeting (the "December 2020 CCOB Meeting") that Park and Ramos would be dismissed. *Id*. ¶ 210.

within SHBA's BSA department relating to the 2017 Consent Order, the ROE, and certain governance and HR issues (*id.* ¶¶ 176–81, 203–04, 206, 211–16, 280–82).  Plaintiffs do not allege that the Safety Complaints or their NYS DFS complaints were made to any federal banking regulator or agency.

Plaintiffs allege, in conclusory fashion, that they complained about violations of the BSA while employed at SHBA, but do not identify with any specificity what such violations are.  *Id.* ¶¶ 203, 207, 211, 213, 214.  When they do describe the nature of their complaints, it is clear their complaints were not about violations of law, but rather, their opinions regarding SHBA's approach to its remediation efforts and addressing the issues raised in the 2017 Consent Order and the ROE—all of which were ***their*** own job responsibilities to ameliorate—as well as criticisms of SHBA's personnel and HR decisions.  Specifically, Plaintiffs assert that they sent the following complaints to the FDIC:

- In September 2020, Park allegedly complained to the FDIC about SHBA's remediation efforts relating to the ROE via the agency's web portal (the "FDIC Portal").  *Id.* ¶ 206.

- In September 2020, Adamson allegedly complained to the FDIC twice about SHBA's governance issues and response to the ROE via email and the FDIC Portal.  *Id.* ¶¶ 176-79, 181.  Adamson later forwarded the email to Park, Ramos, Kuzmiak, and two other members of the BSA team, Eva Errico and Brian Newman.  *Id.* ¶ 180.

- In September 2020, Kuzmiak allegedly emailed FDIC examiners about SHBA's purported failure to provide "the resources necessary for remediation" of the 2017 Consent Order.  *Id.* ¶¶ 203–04.

- On January 7, 2021, Park allegedly emailed FDIC examiners about Constantin's "poor leadership"  and SHBA's "ineffective remediation efforts," including a high turnover of BSA compliance personnel.  *Id.* ¶¶ 211–12.  He went on to state that these alleged deficiencies resulted in "inconsistent oversight and reemerging and continuing apparent violations of law and regulation cited in this Report."  *Id.* ¶ 213.

- In January 2021, Ramos allegedly emailed an FDIC examiner about the perceived lack of relevant BSA experience of "[Constantin's] new team."  *Id.* ¶¶ 214–16.

6

- In February 2021, Kuzmiak allegedly complained via the FDIC Portal about SHBA's HR decision—namely, that Park's job responsibilities had been diminished and "[s]enior management is running the [BSA] department." *Id.* ¶¶ 280–82.

Plaintiffs allege that Defendants "were aware of Adamson's registration with" the FDIC Portal because "[a] registration email was sent to [Adamson's] SHBA email account and thus would have been detected by [SHBA's] IT monitoring department." *Id.* ¶¶ 174–75. While Plaintiffs allege that Defendants "were well aware" that Plaintiffs sent information to the regulators, *id.* ¶ 340, they do not explain how Defendants learned of Plaintiffs' emails to the FDIC regulators prior to their termination.

### D.   SHBA Terminates Plaintiffs for Neutral, Non-Discriminatory Reasons Unrelated to Their Alleged Whistleblowing Activities

#### 1.   Adamson Is Dismissed in October 2020 Due to Divisional Restructuring

During Adamson's tenure, SHBA increasingly utilized outside vendors to perform Adamson's job responsibilities, consistent with Adamson's and Park's multiple proposals to outsource more IT functions to vendors. *Id.* ¶¶ 83–84, 96, 102, 108, 111. SHBA ultimately dismissed Adamson on October 9, 2020, a decision which Park allegedly opposed. *Id.* ¶¶ 187– 89. Plaintiffs concede that Adamson's termination letter explained that SHBA's divisional restructuring plan eliminated his position and that SHBA had determined that it was in SHBA's best interest to hire outside consultants to perform his function. *Id.* ¶¶ 187–88. Plaintiffs also concede that, at the December 2020 CCOB Meeting, Constantin stated that Adamson did not log into SHBA's systems for three months, a statement they claim is incorrect. *Id.* ¶ 190.

#### 2.   The CCOB Approves the Decision to Dismiss Park and Ramos for Performance Reasons at the December 2020 CCOB Meeting

At the December 2020 CCOB Meeting, Constantin made a recommendation to terminate Ramos and Park, which was approved by the CCOB. *Id.* ¶¶ 273–74. Plaintiffs concede that Park

and Ramos "were discharged by decision of the CCOB . . . on December 22, 2020." *Id.* ¶ 271.
Ramos and Park appear to have learned about their termination decision by early January 2021
because they allege that (i) on January 4, 2021, Park and Ramos asked Constantin for
clarification of his statement about their discharge, *id.* ¶ 221, and (ii) Park allegedly sent a
January 5, 2021 email to the NYS DFS referencing his and Ramos' dismissal, *id.* ¶ 210.

Plaintiffs also concede that Park's and Ramos' termination letters dated February 26,
2021 indicated that the reasons for their termination were performance-related, including their
failure to timely and accurately file SARs and CTRs, failure to properly handle agency
examinations, violation of attendance policy, and lack of supervision. *Id.* ¶ 258.   Plaintiffs
assert that these work performance issues, documented in their termination letters, were
pretextual, and that they were retaliated against for their whistleblower activities. *Id.* ¶¶ 264–65.

### 3.    Kuzmiak Is Dismissed in March 2021 for Poor Performance

Similarly, Plaintiffs concede that Kuzmiak's termination letter dated March 4, 2021
indicated that his dismissal was due to performance deficiencies, including his failure to analyze
and manage the CTR soft launch, failure to timely and accurately manage the systems, violations
of SHBA's attendance policy, and other issues indicating lack of competency. *Id.* ¶ 285.  Yet
Plaintiffs allege that these reasons "were false," and that SHBA discharged Kuzmiak "to prevent
him from alerting the examiners" of SHBA's alleged compliance deficiencies and in retaliation
"for confronting Constantin" regarding Adamson's discharge. *Id.* ¶¶ 287–93.

### E.    Park and Ramos Complain About Constantin's Purported Conduct After Learning About SHBA's December 2020 Decision to Terminate Them

On January 4, 2021, Park and Ramos had a meeting with Constantin and sought
clarification about his recommendation to the CCOB in December 2020 to discharge them. *Id.*
¶¶ 219, 221.  During this meeting, Constantin allegedly told Park "I heard a rumor James that

you are fucking Catherine [Ramos] and [another SHBA employee]." *Id.* ¶ 223.  Plaintiffs allege

that Constantin had previously made other "racist and sexist comments," and used "expletives . .

. such as the word 'fuck' to express his frustration with management at SHBA." *Id.* ¶¶ 227–29.

Ramos subsequently reported Constantin's alleged "sexual harassment . . . regarding his

offensive comments" to SHBA's HR department, *id.* ¶¶ 239–41, and Park filed a sexual

harassment complaint on the New York City website and with SHBA's HR department as a

"follow[] up" to Ramos' complaint,  *id.* ¶ 244.

### F.      This Litigation

Plaintiffs filed a complaint on December 6, 2022, ECF No. 1, and an amended complaint

on February 8, 2023, ECF No. 8, after being directed by this Court to refile due to deficient

pleading.  Plaintiffs assert four claims:  (i) a FIRREA whistleblower discrimination claim against

SHBA and the Individual Defendants; (ii) an AMLA whistleblower discrimination claim against

the Individual Defendants; (iii) gender discrimination and hostile work environment claims by

Ramos against all Defendants under the NYCHRL; and (iv) a retaliation claim by Ramos and

Park against all Defendants under the NYCHRL.

## ARGUMENT

### I.      Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

v. *Iqbal*, 556 U.S. 662, 678 (2009)  (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570

(2007)).  "[A] formulaic recitation of the elements of a cause of action" or "legal conclusions"

will not suffice to defeat a motion to dismiss.  *Ruiz* v. *New Avon LLC*, 2019 WL 4601847, at *10

(S.D.N.Y. Sept. 22, 2019) (Broderick, J.) (citation omitted).  "[C]onclusory allegations or legal

conclusions masquerading as factual conclusions" are likewise insufficient.  *AK Tournament*

*Play, Inc.* v. *Town of Wallkill*, 444 F. App'x 475, 476 (2d Cir. 2011).  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," not merely "conceivable." *Twombly*, 550 U.S. at 570.  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678; where a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id*. (citation omitted).  Employment discrimination and retaliation claims must also "'offer more than conclusory statements' and 'the complaint must contain factual allegations supporting the plausible inference that the employer discriminated against the plaintiff *because of* the plaintiff'[s] protected characteristic.'"  *Harris* v. *NYU Langone Med. Ctr.*, 2013 WL 3487032, at *14 (citation omitted) (emphasis in original).

Moreover, when considering a motion under Rule 12(b)(1), this Court should dismiss a claim when it "lacks the statutory or constitutional power to adjudicate it."  *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The burden of proving jurisdiction is on the party asserting it."  *Robinson* v. *Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).  Plaintiffs' claims fail to meet these standards.

## II.     The Amended Complaint Fails to State a Violation Under the FIRREA

As relevant here, the FIRREA prohibits an "insured depository institution," such as SHBA, from "discharg[ing] or otherwise discriminat[ing] against an employee . . . because the employee . . . provided information . . . to any Federal banking agency or to the Attorney General" regarding "a possible violation of any law or regulation."  12 U.S.C. §1831j(a)(1).  Plaintiffs assert a claim against SHBA and the Individual Defendants that they were allegedly terminated after voicing their disagreements with SHBA's remediation approaches regarding the Consent Order and the ROE in violation of the FIRREA.  *See, e.g.,* Compl. ¶ 151 (plaintiffs'

complaints concern SHBA's "refusal to abide by the spirit and letter of the 2017 Consent Order and the ROEs issued since" then); ¶¶ 177–78, 203–04, 215.

Plaintiff's FIRREA claim fails as a matter of law for several independent reasons.

### A.   There is No Cause of Action Under the FIRREA Against Individual Defendants

Plaintiffs' FIRREA claim against the Individual Defendants fails because it is well-established that the FIRREA "does not permit individual liability."  *Segarra* v. *Fed. Rsrv. of New York*, 17 F. Supp. 3d 304, 309 (S.D.N.Y. 2014) (dismissing former bank examiner's claims against her supervisor and other individuals), *aff'd sub nom*. *Segarra* v. *Fed. Rsrv. Bank of New York*, 802 F.3d 409 (2d Cir. 2015), *and aff'd sub nom. Segarra* v. *Fed. Rsrv. Bank of New York*, 617 F. App'x 106 (2d Cir. 2015); *Cosgrove* v. *Fed. Home Loan Bank of New York*, 1999 WL 163218, at *7 (S.D.N.Y. Mar. 23, 1999) (FIRREA "has no provision imposing liability upon individuals or permitting remedies against individuals.").  The FIRREA provides a cause of action only against a covered bank that employed the purported whistleblowing plaintiffs. *Segarra*, 17 F. Supp. 3d at 309.  For this reason alone, Plaintiffs' FIRREA claim against the Individual Defendants fails as a matter of law.

### B.   Plaintiffs Fail to Plausibly Allege Their Purported Whistleblowing Was Regarding "a Possible Violation of Any Law or Regulation"

Plaintiffs' FIRREA claim against all Defendants is also fatally flawed for another reason. A failure to plausibly allege that the purported whistleblowing related to a "possible violation of any law or regulation" forecloses relief under the FIRREA.[6]  12 U.S.C. § 1831j(a)(2).  The term

---

[6]   The FIRREA provides four other possible subject matters of a protected whistleblower complaint—"gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety"—none of which are relevant here. Plaintiffs do not allege that their complaints to a federal banking agency concern the other four enumerated subject matters.

"'regulation' encompasses only those agency pronouncements that carry with them the force of law." *Segarra* 17 F. Supp. 3d at 313.  Thus, to state a claim under FIRREA, the alleged whistleblower, "rather than merely expressing a grievance or noting a suboptimal practice, [must] suggest a violation of a provision carrying 'the force of law.'"  *Taft* v. *Agric. Bank of China Ltd.*, 156 F. Supp. 3d 407, 418 (S.D.N.Y. 2016) (interpreting the BSA's analogous language); *Segarra*, 17 F. Supp. 3d at 313 (interpreting the FIRREA).

As an initial matter, the only permissible predicate for Plaintiffs' FIRREA claim is their communications with the FDIC.  The statute is "unambiguous on its face" that any protected complaint should be directed to a "Federal banking agency"—defined to include the FDIC—or to the United States Attorney General.  *Faiman* v. *Ridgewood Sav. Bank*, 2013 WL 3305785, at *2 (S.D.N.Y. May 31, 2013) (dismissing FIRREA claim for failure to allege that plaintiff provided information to one of the enumerated agencies).[7]

Plaintiffs allege in only conclusory terms that they complained to the FDIC about BSA violations, Compl. ¶¶ 203, 207, 211, 214, and characterize the issues cited in an unidentified report as "apparent violations of law and regulation," *id.* ¶ 213.  It is clear, based on the Amended Complaint, however, that Plaintiffs' grievances relate to Defendants' "refusal to abide by the spirit and letter of the 2017 Consent Order and the ROEs issued" thereafter.  *Id.* ¶ 151; *see supra* p. 11.  This is a core deficiency of Plaintiffs' FIRREA claim.

As a matter of law, the Consent Order that SHBA entered into with the FDIC is an agency order and "by definition is not 'law, rule, or regulation.'"  *Wolf* v. *Pac. Nat. Bank*, 2010

---

[7]  Plaintiffs' alleged Safety Complaints, as well as any internal complaints or those to the NYS DFS, *supra* p. 5, cannot form the basis of their FIRREA claim.  *See Schwyzer* v. *Fiduciary Tr. Co. Int'l*, 2008 WL 3539971, at *4 (S.D.N.Y. Aug. 4, 2008) (dismissing FIRREA complaint when plaintiffs only complained to internal legal department).

WL 5888778 (S.D. Fla. Dec. 28, 2010), at *4–5; *see* Compl. ¶ 52.  The same is true of ROEs.
*See Segarra*, 17 F. Supp. 3d at 313; *Taft*, 156 F. Supp. 3d at 418.

      *Wolf* is instructive.  There, a former bank employee alleged that he was terminated in
retaliation for blowing the whistle on the bank's purported violations of a consent order, entered
into with the Officer of the Comptroller of the Current (the "OCC").  *Wolf*, 2010 WL 5888778, at
*4–5.  The court, in interpreting a Florida whistleblower statute with virtually identical language
as the FIRREA protecting those who "provided information" regarding "an alleged violation of a
law, rule, or regulation," dismissed the case because complaints about the bank's violations of
the OCC consent order simply do not amount to protected whistleblower complaints about a
violation of "law, rule, or regulation" as a matter of law.  *Id*., at *4.  Likewise, Plaintiffs' "end-
run around the strict requirements of [the] statute" should be rejected.  *Id.* at 6.

      Similarly, in *Segarra*, where a former senior bank examiner brought a FIRREA claim
alleging that the bank fired her in retaliation for providing information about an alleged violation
of a compliance risk program, the court found that the plaintiff was not a whistleblower within
the meaning of the statute because the program is "an advisory letter that does not carry with it
the force of law."  *Segarra*, 17 F. Supp. 3d at 314.   The same conclusion is warranted here.

      Plaintiffs' allegations clearly show that their purported complaints concerned their
disagreements with the manner in which SHBA engaged in its remediation efforts.  *See* Compl.
¶¶ 177, 203–04, 206, 211–13, 215.  These complaints are not protected under the FIRREA as a
matter of law.  *See Segarra*, 17 F. Supp. 3d at 311 (FIRREA's protection does not extend to
employees who provide information about noncompliance with advisory letters and other agency
guidance that are not "law or regulation"); *see also Johnston* v. *Merit Sys. Prot. Bd*., 518 F.3d
905, 910 (Fed. Cir. 2008) (interpreting analogous statute, the Whistleblower Protection Act).

Nor can Plaintiffs' criticisms of SHBA's personnel and HR decisions provide a predicate for a viable FIRREA claim because they likewise do not constitute a legal violation. Compl. ¶¶ 177–78, 204, 212, 215, 281; *see Taft*, 156 F. Supp. 3d at 419 (dismissing whistleblower complaint asserting a claim under the BSA when the alleged communications were "quite far from the kind of 'information' contemplated by the federal statutes."); *Fruge* v. *Bd. of Governors of Fed. Rsrv. Sys.*, 2022 WL 5166031, at *14 (D.D.C. Oct. 5, 2022) (limiting FIRREA whistleblower protection to "report[s] [concerning] genuine infractions of law").[8]

### C.   Plaintiffs Fail to Allege That Their Purported Complaints Were a Contributing Factor Resulting in Their Termination

Plaintiffs' FIRREA claim also fails for another reason. To state a claim of whistleblower discrimination under the FIRREA, a plaintiff must plausibly plead that the alleged whistleblower activity was "a contributing factor" in the adverse employment action. 5 U.S.C. § 1221(e)(1) (incorporated by 12 U.S.C. § 1831j(f)). The standard of contributing factor "only make[s] sense when read to require that those involved in the adverse employment action have knowledge of the protected activity—otherwise, no such inference can be drawn." *Wiest* v. *Lynch*, 15 F. Supp. 3d 543, 566 (E.D. Pa. 2014) (interpreting an analogous provision under the Sarbanes-Oxley Act (the "SOX")). As such, to survive a motion to dismiss, Plaintiffs' FIRREA claim must sufficiently set forth facts "on its face" that all Defendants "knew [about Plaintiff's] protected activity, were involved in the alleged adverse employment action, and that a causal connection

---

[8]   To hold otherwise would stretch the protections of FIRREA far beyond Congressional intent, and effectively turn it into a "'general civility code[]' for unhappy employees." *McCallum* v. *Mayorkas*, 2023 WL 3203011, at *12 (D.D.C. May 2, 2023) (on a motion to dismiss for a retaliation claim under Title VII, cautioning that "[c]ourts should not act as 'super-personnel department[s] that reexamine[] an entity's business decisions."); *see also Segarra*, 17 F. Supp. 3d at 311 (refusing to expand the scope of protected activity under FIRREA because "[i]n the Court's view, Congress did not intend the statute to stretch so far.").

exits between the protected activity and the adverse employment action taken by the []
Defendant[s]." *Id.*

Plaintiffs here fail to plausibly allege that Constantin, the alleged SHBA official who
terminated them—or, for that matter, any of the other Defendants—knew of their alleged
protected activity: their complaints to the FDIC sent via the FDIC Portal and their emails to
individual FDIC regulators.  Compl. ¶ 152.  Other than conclusory assertions that the
Defendants knew (*Id.* ¶¶ 174, 340, 351), the Amended Complaint contains only one, improbable
and conclusory, allegation as to *how* Constantin and the other Defendants knew about their
alleged FDIC complaints: that SHBA's IT department would have detected Adamson's
registration email with the FDIC Portal.  *Id.* ¶ 175.  Plaintiffs offer nothing beyond that—there
is no allegation as to how or when each of Defendants allegedly learned about Adamson's
registration email from the IT department; there is no allegation that any of Defendants knew (or
how or when they knew) of any of the other complaints Park and Kuzmiak allegedly sent via the
FDIC Portal; and there is no allegation that any of Defendants knew (or how or when they knew)
of any of the other complaints Adamson, Park, Kuzmiak, and Park allegedly sent to individual
FDIC regulators.  *See* summary of Plaintiffs' alleged complaints to the FDIC *supra* at pp. 6-7.[9]

Such conclusory allegations that Defendants knew of Plaintiffs' communications with the
regulators are not enough.  *See Wolf*, 2010 WL 5888778, at *9 (dismissing FIRREA claim for
failure to allege that employee responsible for termination decision was aware of complaints to

---

[9]   Furthermore, Plaintiffs assert that the FDIC Portal allows "FDIC-insured institutions [such as
SHBA] to conduct business and exchange information with FDIC," Compl. ¶ 173, even
assuming that the fact that Adamson registered with the portal was somehow communicated
to the Defendants (which Plaintiffs do not allege), Plaintiffs do not explain why and how a
bank employee's registration with such a portal would put Defendants on notice that Adamson
had lodged a whistleblower complaint with the FDIC.

federal regulators).  Courts have repeatedly found that when a plaintiff's pleadings fail to "sufficiently set forth facts 'on its face' that [the named individual] Defendants knew that [plaintiff] had engaged in protected activity," they cannot prevail.  *See Wiest*, 15 F. Supp. 3d at 566 (E.D. Pa. 2014) (collecting cases and dismissing whistleblower discrimination claim under the SOX) (alteration in original); *see also Lucio* v. *New York City Dep't of Educ.*, 575 F. App'x 3, 5 (2d Cir. 2014) (dismissing Title VII retaliation claims for failure to plausibly allege plaintiff engaged in protected activity of which the employer was aware).[10]

For all these reasons, Plaintiffs' FIRREA claim should be dismissed as a matter of law.

## III.   The Amended Complaint Fails to State a Violation Under the AMLA

In relevant part, the AMLA prohibits an employer from discriminating against an employee who provides information to the Secretary of Treasury, the Attorney General, a federal regulatory or law enforcement agency, or a person with supervisory authority over the whistleblower, or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct.  31 U.S.C. § 5323, *et seq.*  Plaintiffs bring their AMLA claim against the Individual Defendants, not SHBA, and assert that the Individual Defendants discriminated against them in violation of the AMLA after they submitted their grievances regarding SHBA's remediation efforts relating to the 2017 Consent Order and the ROE to federal and state regulators.  Compl. ¶ 342.  This claim fails as a matter of law.

---

[10]  *Cf. Ashmore* v. *CGI Grp. Inc.*, 2012 WL 2148899, at *7 (S.D.N.Y. June 12, 2012) (finding that employee adequately alleged that the employer knew of the protected activity under the SOX where the complaint alleged "how, when, and to whom" the relevant facts were provided). Mere allegations—such as those Plaintiffs make here—that individuals "may or may not have had knowledge" about the purported protected activity are not adequate.  *Id.*

### A.    Plaintiffs Have Failed to Exhaust Administrative Remedies

Plaintiffs' AMLA claim should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  Claimants seeking relief under the AMLA may not bring an action in federal court unless they have first timely "fil[ed] . . . a complaint with the Secretary of Labor" within 90 days of learning of the alleged discrimination.  49 U.S.C. § 42121(b)(1).  They must also show that the Secretary "has not issued a final decision within 180 days of the filing of th[at] complaint" and that any delay in issuing that decision " is not due to the bad faith of the claimant."  31 U.S.C. § 5323(g)(2)(A)-(B).

It is axiomatic that exhaustion of administrative remedies is a jurisdictional requirement. Analyzing an identically worded provision of whistleblower protection provision under the Sarbanes–Oxley Act, 18 U.S.C. § 1514A(b)(1)(A)-(B), the Second Circuit concluded that "[t]his procedural structure reflects Congress's clear intent for federal courts to exercise jurisdiction . . . only after the claimant has first exhausted the statute's administrative remedies."  *Daly* v. *Citigroup Inc*., 939 F.3d 415, 428 (2d Cir. 2019).  As a result, the Second Circuit held that the administrative exhaustion requirements under that whistleblower protection statute are jurisdictional and a prerequisite to suit in federal court.  *Id.*.

While courts in this Circuit have yet to consider this precise question under the AMLA, courts in other Circuits have held that the AMLA imposes an administrative exhaustion requirement and dismissed plaintiffs' claims for failure to comply with that requirement.  *See, e.g., Chaleplis* v. *Karloutsos*, 2023 WL 2976277, at *3 (E.D. Pa. Apr. 18, 2023) (dismissing AMLA claim for failure to exhaust and holding that the AMLA's "plain statutory language" and the Supreme Court's interpretation of identical statutory language in other whistleblowing

statutes require administrative exhaustion.).[11]

The Amended Complaint here is devoid of any allegation that Plaintiffs filed a timely complaint with the Secretary of Labor within the 90-day deadline. As such, Plaintiffs' AMLA claim should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### B.    There is No Cause of Action Under the AMLA Against the Individual Defendants

Plaintiffs' AMLA claim also fails because individuals cannot be held liable under the AMLA.[12] The scope of liability imposed under the AMLA whistleblower provision is expressly limited to a claimant's "employer." 31 U.S.C. § 5323(g)(1); *see id.* § 5323(g)(2). There is no mention of "agent" liability, which might allow individual defendants to be held liable, and we are aware of no case that has considered or imposed such liability under the AMLA. And that makes good sense—the plain language of the statute, federal courts' interpretation of analogous whistleblower provisions, and the statutory remedial structure of the AMLA, all compel the conclusion that the AMLA does not contemplate imposing liability upon individuals.

---

[11] *See also Sleem* v. *U.S. et al.*, 2023 WL 3143429, at *5 (E.D.N.C. Mar. 27, 2023), *report and recommendation adopted sub nom*., 2023 WL 3136119 (E.D.N.C. Apr. 27, 2023) (dismissing whistleblower claim under 31 U.S.C. § 5323 for failure to exhaust administrative remedies); *Gooden* v. *Joseph P. Addabbo Fam. Health Ctr., Inc.*, 2023 WL 2709735, at *8 (E.D.N.Y. Mar. 30, 2023) (dismissing whistleblower discrimination claim under the Taxpayer First Act for failure to exhaust administrative remedies); *Boyar* v. *Yellen*, 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022) (upholding dismissal of retaliation claims under Title VII and the Age Discrimination in Employment Act for failure to exhaust administrative remedies).

[12] Plaintiffs' AMLA claim is a clear attempt to end run the plain text of the statute's whistleblower provision. Plaintiffs did not bring this claim against SHBA, their former employer, in all likelihood in recognition that SHBA is not subject to the whistleblower provisions of the AMLA. The AMLA does not apply to any bank which is "subject to section 33 of the Federal Deposit Insurance Act (12 U.S.C. 1831j)," 31 U.S.C. § 5323(g)(6), which in turn governs all banks "the deposits of which were insured by [the FDIC]," such as SHBA. 12 U.S.C. §§ 1813, 1831j; *see* Compl. ¶¶ 1, 350 (asserting claims against SHBA under 12 U.S.C. § 1831j (*i.e.,* FIRREA)).

When interpreting analogous federal whistleblower protection provisions, courts have overwhelmingly opined that "only employers can incur liability" when the statute—as is the case with the AMLA—"plainly mentions only the 'employer' as incurring liability." *U.S. ex rel. Sarafoglou* v. *Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006) (citations omitted) (dismissing whistleblowing claims under the False Claims Act against individual defendants); *Wathen* v. *Gen. Elec. Co.*, 115 F.3d 400, 404 (6th Cir. 1997) (same for Title VII claims); *Marciniszyn* v. *PerkinElmer Inc.*, 2018 WL 8729590, at *10 (D. Conn. Mar. 27, 2018) (same for Dodd-Frank Act whistleblower claims). In contrast, in cases where courts have allowed individuals to be held liable, the statutory language—unlike in the AMLA—expressly extends to an employer's "employees" and other "agents." *See* 18 U.S.C. § 1514A(a) (SOX prohibits discrimination by an "employee . . . or agent of" company); 26 U.S.C. § 7623(d) (TFA; same); 12 U.S.C. § 5567 (Consumer Financial Protection Act; similar). When the statutory language is unambiguous on its face, judicial "review generally ends and the statute is construed according to the plain meaning of its words." *Tyler* v. *Douglas*, 280 F.3d 116, 122 (2d Cir. 2001). And, as relevant here, at least one court in this district has already held that "the word 'employer' does not normally apply to a supervisor in his individual capacity." *U.S. ex rel. Sarafoglou*, 451 F. Supp. 2d at 625 (interpreting analogous language under the False Claims Act (the "FCA")). That holding is consistent across Circuits. *See Yesudian ex rel. U.S.* v. *Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001) ("[W]e and all other circuits have held that the word 'employer' does not cover a supervisor in his personal capacity"); *see also Pollak* v. *Bd. of Trustees of the Univ. of Ill.*, 2004 WL 1470028, at *3 (N.D. Ill. June 30, 2004) ("our sister courts have uniformly held that supervisors, such as the Individual Defendants, do not qualify as 'employers' subject to liability under the FCA."). Nor can board members be held individually

liable, by the same reasoning.  *Dyas* v. *City of Shreveport*, 2018 WL 2169976, at *2 (W.D. La. May 10, 2018) (dismissing Title VII claims against board members in their individual capacity because they are not employers).[13]

Accordingly, Plaintiffs fail to state an AMLA claim against the Individual Defendants. [14]

---

[13] Moreover, the AMLA mandates that a prevailing complainant "shall" be entitled to reinstatement and backpay, among other reliefs.  *Id.* § 5323(g)(3)(C)(i).  In such situations, where a statute provides reinstatement and backpay as mandatory forms of relief to a prevailing plaintiff, "common sense" forecloses individual liability because "a mere supervisor could not possibly grant [such relief] in his individual capacity."  *Aryai* v. *Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 387 (S.D.N.Y. 2012) (finding individual liability is inconsistent with the mandatory remedy of reinstatement under the FDA); *see also Lane* v. *Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 161 (E.D.N.Y. 1996) (no individual liability under Title VII because "back pay and reinstatement . . . are essentially equitable remedies most appropriately provided by employers." (citing *Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995))).

[14] Plaintiffs' AMLA claim also fails for two additional reasons.  <u>*First*</u>, Plaintiff do not plausibly allege that their purported whistleblowing activities under the AMLA were a "contributing factor" resulting in their termination, which requires showing of "*intentional retaliation* prompted by the employee engaging in protected activity."  *Powell-Coker* v. *Norfolk S. Ry. Co., Inc.*, 2018 WL 5116837, at *5 (N.D. Ala. Oct. 19, 2018) (emphasis in original) (citing *Blackorby* v. *BNSF Ry. Co.*, 849 F.3d 716, 721 (8th Cir.)); 31 U.S.C. § 5323(g)(3) (incorporating 49 U.S.C. § 42121(b)(B)(i)).  For the reasons discussed in Section II.C *supra*, Plaintiffs have failed to plead allegations sufficient to meet this standard.  <u>*Second*</u>, the AMLA only offers protection when the alleged whistleblower "reasonably believes" that he/she is providing information regarding a violation of enumerated laws.  31 U.S.C. § 5323(g)(1)(C). To satisfy this "reasonable belief" requirement, "a plaintiff must allege sufficient facts about the nature of the alleged violation for the Court to evaluate whether the belief that the conduct was illegal was reasonable."  *Berman* v. *Neo@Ogilvy LLC*, 2014 WL 6865718, at *9 (S.D.N.Y. Aug. 15, 2014), *rej. on other grounds*, 72 F. Supp. 3d 404 (S.D.N.Y. 2014) (interpreting analogous provisions under the Dodd-Frank Act).  Plaintiffs here have failed to even allege that they had such a reasonable belief.  In addition, for the reasons discussed in Section II.B *supra*, Plaintiffs' allegations fall short of what is required to state a claim under AMLA.  *Id.* (refusing to consider "bald conclusory statements" and dismissing the complaint); *Nielsen* v. *AECOM Tech. Corp.*, 762 F.3d 214, 223 (2d Cir. 2014) (dismissing complaint for failure to allege that "the supposed misconduct implicated *any* of the enumerated provisions.") (interpreting analogous provisions under the SOX).

IV.    **The Amended Complaint Fails to State a Hostile Work Environment Claim or a Gender Discrimination Claim Under the NYCHRL**

While it is unclear whether Ramos asserts a NYCHRL gender discrimination claim in addition to a hostile work environment claim, Compl. ¶¶ 359–60, to the extent that she does, both claims are analyzed under the same standard and fail for the same reasons. *Nnebe* v. *City of New York*, 2023 WL 2393920, at *17 (S.D.N.Y. Jan. 30, 2023) ("The NYCHRL does not differentiate between discrimination and hostile work environment claims; rather, both are . . . analyzed under the same standard.") (citations omitted).

A.    **Ramos Fails to State a Claim as Against Frye, Min, O'Meara, Pak, and Yook**

To be held liable under the NYCHRL, an individual "must have actually participated in the conduct giving rise to the claim of discrimination." *Davis-Bell* v. *Columbia Univ.*, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012) (citations omitted). The Amended Complaint, however, is bereft of any allegation that asserts a single gender-based remark or conduct on the part of Frye, Min, O'Meara, Pak, or Yook. Thus, the NYCHRL claims cannot stand against these Defendants as a matter of law. *See Gonzalez* v. *City of New York*, 377 F. Supp. 3d 273, 300 (S.D.N.Y. 2019) (dismissing NYCHRL claims for failure to "allege that any of the [i]ndividual [d]efendants actually participated in the supposed discriminatory conduct"); *see also Morrison* v. *Jones*, 2021 WL 5829749, at *1 (2d Cir. Dec. 9, 2021) (affirming dismissal of NYCHRL claims when plaintiff "does not allege that either individual defendant participated in the conduct giving rise to [plaintiff's] claims.").

B.    **Ramos Fails to Allege Defendants' Discriminatory Intent or Conduct**

These same claims as against the remaining Defendants—Constantin and SHBA—fail as well. "A plaintiff under the NYCHRL must allege that she is 'treated less well' *because of a discriminatory intent*." *Stinnett* v. *Delta Air Lines, Inc.*, 803 F. App'x 505, 509 (2d Cir. 2020)

(emphasis in original); *Gonzalez*, 377 F. Supp. 3d at 302 (same for hostile work environment claim).  As the Second Circuit has cautioned, "courts must be mindful that the NYCHRL is not a general civility code," *Szewczyk* v. *Saakian*, 774 F. App'x 37, 38 (2d Cir. 2019), and "generalized hostility or generally uncivilized behavior is not actionable," *Yost* v. *Everyrealm, Inc.*, 2023 WL 2224450, at *12 (S.D.N.Y. Feb. 24, 2023).  A plaintiff must allege a sufficient factual basis to "link[]" "defendant[s'] offending conduct" to "a protected characteristic"—in this case, Ramos's gender—to state a NYCHRL claim.  *Yost*, 2023 WL 2224450 at *12.

Ramos' allegations, however, fall far short.  The only gender-related allegations asserted in support of Ramos's discrimination/hostile work environment claims are: (1) a single comment purportedly made by Constantin to Park that Constantin "heard a rumor" that Park had sexual intercourse with two SHBA employees, including Ramos; and (2) the conclusory allegation of Constantin's purported "racist and sexist comments."  Compl. ¶¶ 223, 227–29.  None of these satisfy Plaintiffs' burden at the pleading stage as a matter of law.

To start, Constantin's alleged remark about the rumored sexual relationship between Ramos and Park does not support a plausible inference of gender-based discriminatory intent.  "[C]ourts in this district have routinely held that comments by coworkers about an extramarital affair do not inherently constitute conduct motivated by gender animus."  *Olaechea* v. *City of New York*, 2019 WL 4805846, at *6 (S.D.N.Y. Sept. 30, 2019) (citations omitted).  Nor does any disparate treatment based on alleged sexual relationships give rise to a gender discrimination claim under the NYCHRL because such conduct is "completely unrelated to plaintiff's gender."  *Fattoruso* v. *Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 576–77 (S.D.N.Y. 2012).  This is especially true where, as here, the purported sexually offensive comment was allegedly not even directed at Ramos, but at Park.  Compl. ¶ 223.  "A statement that an employee is having

22

a consensual relationship with a co-worker cannot be construed as discrimination or harassment on the basis of sex absent some additional showing, such as that the plaintiff was singled out for such comments because of his or her gender." *Dellefave* v. *Access Temps., Inc.*, 2001 WL 25745, at *7 (S.D.N.Y. Jan. 10, 2001).  There is nothing in the Amended Complaint about the content or context of Constantin's statement that is gender-based, and it thus cannot support Plaintiffs' claims of gender discrimination/hostile work environment under the NYCHRL.  *See Stinson* v. *City Univ. of N.Y.,* 2018 WL 2727886, at *10 (S.D.N.Y. June 6, 2018) (holding that plaintiff failed to state a claim for discrimination based on race because he did not "allege any defendant commented on his race in any way").

The sole remaining basis for Ramos' claims is the conclusory allegation that referring to a rumored sexual relationship "was not the first occasion that Constantin had made off-color and inappropriate comments that included racist and sexist comments."  Compl. ¶ 227.  This also fails to support Ramos' claims as a matter of law, both because "racially motivated" comments "cannot support a claim for a hostile work environment based on gender," *Bliss* v. *MXK Rest. Corp.*, 220 F. Supp. 3d 419, 423 (S.D.N.Y. 2016), and because "bald assertions" of discriminatory comments "unsupported by any comments, actions, or examples . . . are implausible and insufficient to survive a motion to dismiss" under the NYCHRL.  *Gooden* v. *Joseph P. Addabbo Fam. Health Ctr., Inc.*, 2023 WL 2709735, at *4 (E.D.N.Y. Mar. 30, 2023) (citation omitted).  Plaintiffs do not even identify what "sexist" comment Constantin supposedly made, other than his alleged comment regarding Park, nor does it assert any allegation as to whom such comments were made or when.[15]  Compl. ¶¶ 223, 227.

---

[15]   The allegation that Constantin uttered expletives "such as the word 'fuck'" is irrelevant for these same reasons.  While inappropriate, such statements are not actionable because "they do not implicitly target Plaintiff on the basis of [her] gender."  *Tortorici* v. *Bus-Tev*, LLC, 2021

In sum, because none of the factual allegations plausibly allege Ramos was treated "less well" because of her gender, Ramos' gender discrimination/hostile work environment claims under the NYCHRL should be dismissed.

## V.     The Amended Complaint Fails to State a Retaliation Claim Under the NYCHRL

Plaintiffs allege that Ramos and Park were terminated in retaliation for complaining in January 2021 about Constantin's purported "sexually offensive comments and conduct toward Ramos." Compl. ¶¶ 239–42, 244, 369.  To state a claim for retaliation under the NYCHRL, plaintiffs must allege sufficient facts demonstrating that: (1) plaintiffs participated in a protected activity; (2) defendants were aware of that activity; (3) defendants took an adverse employment action; and (4) there exists a causal connection between the protected activity and the adverse action. *Garcia* v. *N.Y.C. Health & Hosps. Corp.*, 2019 WL 6878729, at *8 (S.D.N.Y. Dec. 17, 2019).

Ramos' and Park's NYCHRL retaliation claims fail for the simple reason that "[t]here can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity" *Pinero* v. *Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005).  The only alleged protected activity under this claim is Ramos's and Park's alleged complaints to SHBA's HR Department and New York City regarding Constantin's purported conduct in January 2021.  Compl. ¶¶ 232–49, 361, 369.  By their own allegations,

---

WL 4177209, at *14 (S.D.N.Y. Sept. 14, 2021); *see also Leizerovici* v. *HASC Ctr., Inc.*, 2018 WL 1114703, at *12 (E.D.N.Y. Feb. 27, 2018) (dismissing NYCHRL claims relying on "vulgar comments."). In fact, Ramos herself alleges a gender-neutral motive behind such statements—that is, Constantin's expression of "his *frustrations with management*." Compl. ¶ 228 (emphasis added). This alone is self-defeating for the purpose of this motion. *See Russo* v. *N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 451, 453 (E.D.N.Y. 2013) (dismissing NYCHRL claims based on comments directed "at the entire staff," and stating "there is no evidence [the defendant] created an environment that was particularly difficult for women."). Nor does the Amended Complaint allege to whom such comments were made or when.

however, Ramos and Park "were discharged by decision of the CCOB . . . on December 22, 2020." *Id*. ¶ 271.  The alleged protected activity did not occur until a month after the alleged adverse employment action.  *Id.* at ¶ 221.  For this reason, Plaintiffs fail to state a retaliation claim.  *Alvarez* v. *New York City Dep't of Educ*., 2021 WL 1424851, at *11 (S.D.N.Y. Apr. 15, 2021) ("There can be no 'retaliation for acts not yet taken.'").

## VI.   Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' NYCHRL Claims

For the reasons discussed above, all of Plaintiffs' federal and NYCHRL claims should be dismissed as a matter of law.  Alternatively, in the unlikely event that the federal claims are dismissed but the NYCHRL claims survive, this Court should decline to exercise supplemental jurisdiction over those claims.  *See Gorokhovsky* v. *N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (absent viable federal claims, declining to exercise supplemental jurisdiction over NYCHRL claims).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss should be granted. Further, because Plaintiffs have already amended their complaint once and there is no set of facts under which Plaintiffs' claims would be legally viable, their claims should be dismissed with prejudice, without leave to replead.  *See Malcolm* v. *Ass'n of Supervisors & Adm'rs of Rochester*, 831 F. App'x 1, 5 (2d Cir. 2020) (affirming district court's dismissal with prejudice where the plaintiff's employment discrimination claims "fail as a matter of law").

Dated:  June 8, 2023
       New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  */s/ Liza M. Velazquez*

Michael E. Gertzman
Liza M. Velazquez
Leah J. Park
1285 Avenue of the Americas
New York, NY  10019-6064
Phone:  (212) 373-3000
Fax:  (212) 757-3990
mgertzman@paulweiss.com
lvelazquez@paulweiss.com
lpark@paulweiss.com

*Attorneys for Defendants Shinhan Bank
America, Charles Constantin, Daniel E. Frye,
Walter O'Meara, Dae-Ki Min, Ryan Pak, and
Ji Young Yook*